**A. M. MacNEIL, Appellant,**

v.

**Benjamin GARGILL, Trustee,
Appellee.**

**No. 4999.**

United States Court of Appeals
First Circuit.

March 30, 1956.

Angus M. MacNeil, Boston, Mass., pro se.

Louis J. Shrair, Boston, Mass., with whom Gargill & Shrair, Boston, Mass., was on brief for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

WOODBURY, Circuit Judge.

M. A. Owens Company, M. A. Owens Cafe, Inc., and MacNeil Bros. Company, all Massachusetts corporations, and Angus M. MacNeil individually all appealed to this court from two orders of the court below affirming a variety of orders entered by a Referee in Bankruptcy. The appeals of the three corporations were dismissed in this court for failure to file proper bonds, leaving Angus M. MacNeil the sole appellant. And he has appeared in this litigation in two capacities. He appeared as counsel of record for the three corporations named above, and he also appears *pro se* to protect his rights as an alleged mortgagee of certain personal property of M. A. Owens Company which was adjudicated a bankrupt under the following circumstances.

M. A. Owens Company was engaged in the business of operating a cafe and restaurant in Boston until sometime early in 1955 when, counsel for appellee tells us (without contradiction by appellant) and the record and original papers indicate, the appellee Gargill was appointed a state court receiver and as such took possession of the corporation's assets and proceeded to operate its business. At any rate on March 23, 1955, the stockholders of M. A. Owens Company voted unanimously at a special meeting called for the purpose to authorize Angus M. MacNeil, who was apparently one of its principal officers, to prepare, submit, and present a petition for an arrangement with the corporation's creditors under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq., and to propose a plan which would protect the interests of the corporation. MacNeil

set about his duties at once and on March 25 he filed a petition under § 322 of Chapter XI proposing an arrangement and plan. But he prepared this petition on a printed official form from which he deleted the allegations that the corporation was insolvent or unable to pay its debts as they matured. Schedules attached to the petition listed property of M. A. Owens Company having a value of $37,968 ($25,968 for equipment and fixtures and $12,000 for licenses) and debts amounting to $25,414.67, $23,000 of which was listed as due to MacNeil on a mortgage of its personal property. No allowance whatever was made to meet the claims of twelve creditors listed as to name but not as to amount, the validity of whose claims was said to be unknown.

Apparently MacNeil soon discovered that his Chapter XI petition was defective for failure to comply with the mandate of § 323 thereof wherein it is provided that "A petition filed under this chapter shall state that the debtor is insolvent or unable to pay his debts as they mature, * * *." for on March 28 MacNeil filed a motion that the corporation's petition "be dismissed before any further action is taken thereon." On March 29 the Referee in Bankruptcy to whom the petition had been referred notified the corporation and its listed creditors of the filing of the petition and of the motion to dismiss it, and gave notice that on April 8 at 10:00 a.m. a hearing would be held at a stated place "at which time consideration will be given as to whether the debtor should be adjudged a bankrupt or the proceeding dismissed." On the same day, acting on the petition of two of the twelve creditors who were listed as having claims of unknown validity, the Referee appointed the state court receiver, Gargill, the appellee here, Receiver in Bankruptcy and gave him authority to operate the debtor's business.

On April 8 before the time set for the hearing MacNeil appearing on behalf of M. A. Owens Company filed a motion to withdraw its motion to dismiss "leaving the petition and the original plan in force and effect as originally filed." At the same time one of the twelve creditors mentioned above filed an objection to the allowance of the debtor's motion to dismiss its petition.

The record does not disclose what transpired at the hearing on April 8. Its results, however, are clear enough. The Referee denied M. A. Owens Company's motion to withdraw its motion to dismiss, denied its motion to dismiss, adjudicated it a bankrupt, and allowed some, at least, of its creditors to elect Gargill, who had served as state court receiver and receiver in bankruptcy, as their trustee. Promptly on April 11, M. A. Owens Company by Angus M. MacNeil filed two petitions for review, one from the order of the Referee appointing a receiver and the other from the order of the Referee adjudicating it a bankrupt. Subsequently M. A. Owens Company by MacNeil filed four more petitions, making up to this point six in all, for review of various later orders issued by the Referee in the course of the bankruptcy proceeding. The District Court, on May 5, affirmed the orders of the Referee challenged in the first three petitions mentioned above and M. A. Owens Company at once filed notice of appeal. We see no occasion to state the matters covered in these petitions in detail. It will suffice to say that at least one of them squarely raised the question of the jurisdiction of the Referee to adjudicate M. A. Owens Company a bankrupt.

Finally, on May 27, M. A. Owens Company, M. A. Owens Cafe, Inc., and MacNeil Bros Company, all by Angus M. MacNeil, and Angus M. MacNeil personally filed another petition for review— this time of an order of the Referee confirming a private sale by the trustee of M. A. Owens Company's liquor license. It, like some of its predecessors, includes the assertion that the court is without jurisdiction over the entire proceeding for the reason that there was no allegation or proof that M. A. Owens Company was insolvent or unable to pay its debts as they mature. On June 3 the District

Court affirmed the Referee's orders challenged in the last four petitions. The three corporations and MacNeil on June 4 filed notice of appeal to this court from both orders of the District Court, that is to say, from its order of May 5 covering the first three petitions for review and also from its order of June 3 covering the remaining four petitions.

The corporations, as already noted, are no longer appellants. MacNeil personally is the only one left. And he argues two questions: first the question of jurisdiction to adjudicate M. A. Owens Company a bankrupt and second, if that question be answered in the affirmative, the validity of all of the Referee's orders affirmed by the District Court, but principally his order confirming the Trustee's private sale of the corporation's liquor license.

We entertain serious doubt whether Angus M. MacNeil personally has any standing to assert lack of jurisdiction to adjudicate M. A. Owens Company a bankrupt. His challenge would seem to constitute a collateral attack upon a judgment entered after litigation of the jurisdictional issue. However we pass the question for we think it clear that there was jurisdiction to adjudicate M. A. Owens Company a bankrupt.

 M. A. Owens Company's original petition was obviously defective for failure to allege an essential fact, i. e. its insolvency or inability to pay its debts as they mature. The petition, therefore, was subject to dismissal out of hand. Certainly the corporation's motion to dismiss its petition was entitled to favorable action even without a hearing. But the Referee, instead of dismissing at once, chose to hold a hearing on the petition and the motion to dismiss it, perhaps in the hope of clarifying a situation already becoming confused, and we cannot see how a hearing could prejudice anyone. But at the time of the hearing the situation had radically changed because before it began the corporation moved to withdraw its motion to dismiss "leaving the petition and the original

plan in force and effect as originally filed." MacNeil admits in his brief that he knew when he filed his motion to dismiss that the benefits of Chapter XI were available only to those who were insolvent or unable to meet their debts as they mature. He, therefore, cannot be heard to assert inadvertence or mistake when he moved to withdraw that motion. The motion to withdraw the motion to dismiss must have been intended to mean something and we think its only meaning could be that M. A. Owens Company wished to avail itself of the benefits of Chapter XI in the only way it could, that is, by confession of its insolvency or inability to pay its debts as they matured. In short we consider the motion to withdraw the motion to dismiss, in view of the circumstances under which it was filed, as tantamount to a deletion of the cancellation on the original petition of the allegation of insolvency or inability to pay debts as they mature. Thus the defect in the original petition was cured by the petitioner's subsequent pleadings. At the time of the hearing on April 8, therefore, the Referee could properly, as he evidently did, consider the petition in the light of the pleadings as admitting what the state court receivership rather clearly indicates to be the fact, that is, that M. A. Owens Company was insolvent in the statutory sense. Indeed, any other interpretation of the pleadings would seem to indicate that MacNeil was deliberately flouting the vote of the stockholders of M. A. Owens Company at their special meeting on March 23 authorizing him to prepare, file, and prosecute a Chapter XI arrangement for the corporation. Certainly MacNeil cannot be heard to claim the benefits of Chapter XI for his corporate client and at the same time deny the existence of a fact which he knows to be essential to a Chapter XI proceeding. Construing the pleadings as we do and assuming in the absence of anything in the record to indicate the contrary that the creditors at the hearing held by the Referee on April 8 rejected the arrangement offered by M. A. Owens Com-

pany, it is clear that the Referee had the power under § 376 of Chapter XI to adjudicate it a bankrupt if he thought, as evidently he did, that course to be in the best interest of the creditors.

Turning now to the merits we find ourselves confronted with further procedural difficulties. While we have assumed arguendo that MacNeil can properly raise jurisdictional questions here now, the correctness of that assumption is by no means clear. We now go on to consider whether he can have review of non-jurisdictional questions by the method he has selected.

MacNeil personally is seeking appellate review of all of the orders of the Referee affirmed by the District Court both in its order of May 5 and in its order of June 3. But he did not, personally, petition the District Court for review of any order of the Referee except the one of May 17 approving the Trustee's sale of M. A. Owens Company's liquor license. The question, therefore, arises whether MacNeil has any standing in this court to challenge orders of the District Court affirming orders of the Referee which MacNeil never asked the District Court to review in accordance with the provisions of § 39, sub. c of the Bankruptcy Act, 52 Stat. 858, 11 U.S.C.A. § 67, sub. c, quoted in material part in the margin.*

 This section provides an adequate method for the review of orders of a Referee in Bankruptcy. We do not see any reason why the method outlined in it should not be exclusive or why its provisions should not be strictly construed. MacNeil's failure to follow or even attempt to comply with its terms deprived him of standing in the District Court to question the Referee's orders, except the last one, and not being a party below he has no standing here. See L. & R. Wis-

ter & Co., 3 Cir., 1916, 237 F. 793; In re Bender Body Co., 6 Cir., 1943, 139 F.2d 128.

 His contentions with respect to the only order of the Referee which he sought to have reviewed below and hence the only one he can challenge here, that is, the order confirming the Trustee's sale of M. A. Owens Company's liquor license, are too insubstantial to warrant detailed consideration or even discussion. It will be enough to say that an examination of the record discloses ample support for the Referee's action.

The Orders of the District Court are affirmed.

---

* "A person aggrieved by an order of a referee may within ten days after the entry thereof, or within such extended time as the court may for cause shown allow, file with the referee a petition for review of such order by a judge and serve a copy of such petition upon the adverse parties who were represented at the hearing. Such petition shall set forth the order complained of and the alleged errors in respect thereto."